AO 91 (Rev. 11/82)

# CRIMINAL COMPLAINT

ORIGINAL

| UNITED STATES DISTRICT COURT | CENTRAL DISTRICT OF CALIFORNIA | |
|---|---|---|
| UNITED STATES OF AMERICA<br>v.<br><br>BRYAN CHO, also known as<br>CHO FERDMOND YAP | DOCKET NO. | FILED<br>CLERK, U.S. DISTRICT COURT<br>OCT 2 2017<br>CENTRAL DISTRICT OF CALIFORNIA<br>BY □ DEPUTY |
| | MAGISTRATE'S CASE NO.<br>17 MJ 02450 | |

Complaint for violation of Title 18, United States Code, Sections 545, 2(b) (unlawfully importing, and willfully causing the unlawful importation of, merchandise into the United States contrary to law)

| NAME OF MAGISTRATE JUDGE<br>HONORABLE JOHN E. MCDERMOTT | UNITED STATES<br>MAGISTRATE JUDGE | LOCATION<br>Los Angeles, California |
|---|---|---|

| DATE OF OFFENSE<br>October 28, 2016 | PLACE OF OFFENSE<br>Los Angeles County | ADDRESS OF ACCUSED (IF KNOWN)<br>916 E. Pacific Coast Highway, Long Beach, CA 90804 |
|---|---|---|

COMPLAINANT'S STATEMENT OF FACTS CONSTITUTING THE OFFENSE OR VIOLATION:

[18 U.S.C. §§ 545, 2(b)]

On or about October 28, 2016, in the County of Los Angeles, within the Central District of California, and elsewhere, defendant BRYAN CHO, also known as CHO FERDMOND YAP, knowingly and fraudulently, imported and brought, and caused to be imported and brought, merchandise, namely five monitor lizards, into the United States contrary to law, that is: (1) without reporting or declaring said monitor lizards to the United States Fish and Wildlife Service, in violation of Title 50, Code of Federal Regulations, Section 14.61; and (2) without obtaining the necessary documents under the Convention on International Trade in Endangered Species of Wild Fauna and Flora ("CITES"), in violation of the Endangered Species Act, Title 16, United States Code, Sections 1538(c) and 1540(b), and CITES, Title 50, Code of Federal Regulations, Sections 23.13(a) and 23.20(e).

BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED:

(See attached affidavit which is incorporated as part of this Complaint)

MATERIAL WITNESSES IN RELATION TO THIS CHARGE: N/A

| Being duly sworn, I declare that the foregoing is true and correct to the best of my knowledge. | SIGNATURE OF COMPLAINANT<br>**JUAN RAMIREZ AMEZCUA**<br>OFFICIAL TITLE<br>SA, U.S. Fish and Wildlife Service |
|---|---|

Sworn to before me and subscribed in my presence,

| SIGNATURE OF MAGISTRATE JUDGE(1) | DATE<br>October 2, 2017 |
|---|---|

(1) See Federal Rules of Criminal Procedure 3 and 54

AUSA Erik Silber x12231 & Amanda Bettinelli x 0470       REC: bond

**AFFIDAVIT**

I, Juan Ramirez Amezcua, being duly sworn, declare and state as follows:

## I. INTRODUCTION

1.    I am a Special Agent ("SA") with the Department of the Interior, United States Fish and Wildlife Service ("USFWS"), Office of Law Enforcement, stationed in Torrance, California.  I am authorized by the Secretary of the Interior to conduct searches and seizures and to make arrests, as authorized by law, pursuant to the Lacey Act, Title 16, United States Code, Section 3371 et seq.  I am an investigative law enforcement officer of the United States within meaning of Title 16, United States Code, Section 3375, and a federal law enforcement officer within the meaning of Rule 41(a) of the Federal Rules of Criminal Procedure.  I have been employed by USFWS as a SA since March of 2016.  I am currently assigned to the USFWS Office in Torrance, California, which investigates wildlife trafficking crimes, including the unlawful importation and exportation of wildlife. I attended the Federal Law Enforcement Training Center Criminal Investigator Training Program ("CITP") Academy and USFWS Special Agent Basic School ("SABS") from March of 2016 through July of 2016.  My training at CITP and SABS included classes with a focus on smuggling of live wildlife and wildlife products.

1

2.   My experience is based on my training as a Wildlife Inspector when I was employed by the USFWS Office of Law Enforcement in the Torrance, California office for the Port of Los Angeles from August of 2009 to March of 2016.  As such, I have participated in and have assisted in investigations relating to wildlife trafficking crimes, specifically international smuggling.  My training and experience in wildlife trafficking crimes have included the regulation of importation and exportation of federally protected wildlife, and investigating individuals who participate in the commercial importation and exportation of wildlife.  This experience as a Wildlife Inspector has put me in contact with individuals who are involved in the wildlife pet trade.  Communication with these individuals has provided me with knowledge about the types of containers and packaging used to smuggle fish, reptiles, and turtles.

## II. <u>PURPOSE OF AFFIDAVIT</u>

3.   This affidavit is made in support of a criminal complaint charging BRYAN CHO, also known as Cho Ferdmond Yap, with unlawfully importing wildlife into the United States, in violation of Title 18, United States Code, Section 545.

4.   The facts set forth in this affidavit are based upon my personal observations, my training and experience, and/or

2

information obtained from various law enforcement personnel and

witnesses.  This affidavit is intended to show merely that there

is sufficient probable cause for the requested complaint and

does not purport to set forth all of my knowledge of, or

investigation into, this matter.  Unless specifically indicated

otherwise, all conversations and statements described in this

affidavit are related in substance and/or in part only.

### III. <u>APPLICABLE LAW</u>

5.    The Endangered Species Act ("ESA") is a federal law

that, among other things, regulates the importation and

exportation of certain wildlife and plants to and from the

United States, and implements the United States' obligations

under the Convention on International Trade in Endangered

Species of Wild Fauna and Flora ("CITES").

6.    CITES is an international agreement among

approximately 183 nations, including the United States and

Philippines, that establishes certain requirements that must be

met before CITES-protected wildlife may be imported or exported

from signatory nations.  Wildlife protected under CITES is

divided into Appendices I, II, and III.  Wildlife listed in

Appendix I have the highest level of protection and include

those species threatened with the immediate risk of extinction.

Title 50, Code of Federal Regulations, Section 23.13 generally

provides that it is unlawful for any person subject to the jurisdiction of the United States to attempt to import or engage in international trade with, any specimen of a species listed in CITES Appendix I, II, and III.  All wildlife listed in Appendix I may only be legally imported into the United States when accompanied by a CITES permit issued by the United States and an export permit or re-export certificate from the country of origin.  All Appendix II wildlife may only be imported into the United States when accompanied by an export permit or re-export certificate from the country of origin.  50 C.F.R. §§ 23.20(e), 23.35, 23.36.

7.    All species of monitor lizards (Varanidae) are listed in CITES as Appendix I or II.

8.    Title 16, United States Code, Sections 1538(c), 1540(b), provide criminal sanctions for any person to knowingly engage in any trade in any specimens contrary to the provisions of CITES.

9.    Title 18, United States Code, Section 545 makes it unlawful for a person to "fraudulently or knowingly import[] or bring[] into the United States, any merchandise contrary to law, or receive[], conceal[], buy[], sell[], or in any manner facilitate[] the transportation, concealment, or sale of such merchandise after importation, knowing the same to have been imported or brought into the United States contrary to law."

10.   The Lacey Act, 16 U.S.C. § 3371, et seq., is a federal law that, among other things, makes it unlawful for any person to make or submit any false record, account, or label for, or any false identification of, any fish, wildlife, or plant which has been or is intended to be either imported or transported in interstate or foreign commerce.   16 U.S.C. §§ 3372(d), 3373(d).

11.   Federal law generally provides that all importers of wildlife must file with the USFWS a completed Declaration for Importation or Exportation of Fish or Wildlife (Form 3-177), that is signed by the importer or the importer's agent, upon the importation of any wildlife at the place where USFWS clearance is requested.   See 50 CFR §§ 14.61 and 14.52.

### IV. STATEMENT OF PROBABLE CAUSE

A.   INSPECTION OF PACKAGE WITH MONITOR LIZARDS CONCEALED IN STEREO EQUIPMENT

12.   On October 31, 2016, USFWS SA Stephanie Johnson informed me of the following:

a.   On the morning of October 28, 2016, USFWS SA James Dowd, the Special Agent assigned to Chelsea, Massachusetts, notified SA Johnson of a FedEx parcel with tracking #807716803668 that was arriving from the Philippines and suspected to contain live monitor lizards.   SA Dowd told SA Johnson that he currently has an ongoing investigation of smuggled wildlife from the Philippines in stereo equipment and

learned of the parcel during the course of his investigation.
Online FedEx information for the parcel with tracking
#807716803668 listed the recipient as a Bryan CHO at "916. E.
Pacific Coast Hwy, Long Beach, California 90804."  The sender
was listed as Aris Gil Pagano at "B. Rodriguez Cebu City, Cebu,
Phils [Philippines], 6000."  SA Dowd told SA Johnson that the
parcel had already entered the United States through the FedEx
sort facility in Oakland, California.  Therefore, SA Dowd had
already coordinated a physical inspection of the parcel with
USFWS SA Al Colby, the Special Agent assigned to San Francisco,
California.

    b.   SA Johnson then spoke to SA Colby, who said that he
had arrived at the FedEx international sorting facility in
Oakland, California at around 2 a.m. that morning to inspect the
FedEx parcel for CHO.  SA Colby took photographs that he later
sent to SA Johnson via email, which SA Johnson then provided to
me (some of his photographs are attached as Exhibits A, B, and C
to this affidavit).  SA Colby told SA Johnson that he first
examined the parcel with a United States Customs and Border
Protection x-ray machine, which revealed a color (orange)
typically seen when objects are from a non-man made source, such
as wildlife.  SA Colby then examined the top of the parcel which
had a FedEx international airway bill and picture of a black
stereo system.  The affixed FedEx international air waybill

listed the recipient as Bryan CHO at 916 E. Pacific Coast Hwy, Long Beach, California 90804.  SA Colby then opened the parcel and found five live monitor lizards (four brightly-colored monitor lizards and one darkly-covered monitor lizard) wrapped in black cloth bags concealed within the stereo system.  SA Colby also told SA Johnson that the one dark colored monitor lizard appeared to be sick.

c.   SA Colby told SA Johnson that, based on his experience and training, he identified the wildlife found concealed in the stereo system as being monitor lizards (Varanidae) and two different species:  Varanus cumingi, listed on CITES Appendix II, and Varanus nuchalis, also listed on CITES Appendix II.  SA Colby told SA Johnson that his identification was based on information learned from other investigations where the same species of monitor lizards have been intercepted.

d.   SA Colby told SA Johnson that there were no import CITES permits, other permits, or any documents suggesting the lawfulness of the importation of the monitor lizards in the package itself.

e.   SA Colby told SA Johnson that he then repackaged the parcel to its original condition, and released it into the FedEx delivery system to be delivered by FedEx.

B.   UNDERCOVER SURVEILLANCE AT CHO'S BUSINESS

13.   SA Johnson informed me that, later that morning on October 28, 2016, she attempted to locate the parcel in Los Angeles, but she learned from FedEx that they had already delivered it.  She, SA Adam Diehl, SA Laura Chee, then went in an undercover capacity around 10 a.m. on October 28 to "916 E. Pacific coast Hwy" in Long Beach to follow-up on the parcel.  SA Johnson told me that she observed the outside of the business which displayed a sign with the name JTK Reptiles, then entered and met an individual who introduced himself as "Bryan," the owner of JTK Reptiles.  Based on the comparison in appearance from an obtained California Department of Motor Vehicles drivers licenses, SA Johnson recognized "Bryan" as Bryan CHO. Additionally, I have learned from CHO's driver's license information that CHO is listed as "CHO FERDMOND YAP" at "PO BX 91081, Long Beach, CA 90809."

14.   SA Johnson informed me that CHO then showed the special agents several of his reptiles, including various species of monitor lizards.  While speaking with CHO, SA Johnson observed a blue plastic container with four live monitor lizards soaking in water which appeared to be the same four brightly colored monitor lizards that were intercepted in San Francisco. Next to the blue container sitting on an office chair, SA Johnson observed a stereo with a set of speakers with part of

the speakers opened slightly, which suggested something may have
been removed from them (SA Johnson originally thought that they
were the same speakers that SA Colby had inspected but, after
looking at his photographs of the speakers, Exhibit A, she told
me that she did not think they were the same speakers.)
Photographs of the blue container and the speakers are attached
as Exhibits D and E to this affidavit.

15.   CHO told the special agents that he preferred to
specialize in exotic wildlife that are rare and not typically
found within the United States.  According to CHO, his ability
to specialize in rare wildlife allowed him to compete with other
reptile dealers.  The special agents obtained a business card
for JTK Reptiles from CHO, and then returned to the USFWS office
in Torrance, California.

### C.   CONFIRMATION OF THE PACKAGE, THE LACK OF DOCUMENTATION, AND OF THE PROTECTED SPECIES

16.   On November 1, 2016, I sent an email request to Wanda
Gibbs, a Compliance Officer at FedEx in Oakland, California to
conduct a Shipment Information Report for the FedEx parcel
destined for CHO with tracking #807716803668.  The report
resulted in the finding that the mentioned FedEx parcel was
shipped from the Philippines by an Aris Gil Pagano at B.
Rodriguez Cebu City, Cebu City Cebu, Philippines, 6000.  The
listed recipient on the parcel was Bryan CHO at "916. E. Pacific

Coast Hwy, Long Beach, California 90804." On November 4, 2016, I received an email from Gibbs, detailing that the FedEx parcel with tracking #807716803668 was described as amplifiers.

17. On November 7, 2016, I conducted a query of the Law Enforcement Management Information System ("LEMIS"), a database maintained by the FWS. That database would have had any declaration of wildlife that had been filed by CHO or his overseas supplier. The query did not identify any Form 3-177 Declaration for Wildlife, or any records for any shipments related to CHO or JTK Reptiles.

18. On September 29, 2017, I requested a search for CHO and JTK Reptiles with the Law Enforcement CITES Clerk, Sealy Shephard, through the USFWS Service Permit Issuance and Tracking System ("SPITS"). SPITS stores information including import/export license applications, CITES permits, CITES permit applications, and other required permits to possess, import, and/or export wildlife. On the same date, Shephard said that she found no records of such permits or licenses as to CHO or JTK Reptiles.

19. On September 21, 2017, I sent photographs taken by SA Colby of the monitor lizards he inspected on October 28, 2016, to Senior Forensic Scientist, Barry Baker, at the Fish and Wildlife Service Forensics Laboratory in Ashland, Oregon. On September 26, 2017, I received an email from forensic scientist

Baker that included a provisional identification of the monitor lizards as each being of the family Varanidae and of the type Varanus, all of which are protected by CITES to the level of at least Appendix II.

### D. FACEBOOK COMMUNICATION

20. On March 10, 2017, I established communication with CHO in an undercover capacity on Facebook at the profile "https://www.facebook.com/JTKbryan/#," the Facebook profile that CHO has created and where he also advertised his JTK Reptiles business. I messaged CHO regarding his Facebook ad for the sale of Varanus cumingi (listed on CITES Appendix II) and Varanus nuchalis (listed on CITES Appendix II) monitor lizards. CHO told me that he currently had a female Varanus nuchalis (listed on CITES Appendix II) for $2,000, a female Varanus cumingi (listed on CITES Appendix II) for $2,500, and a male Varanus cumingi (listed on CITES Appendix II) for $2,500. I then asked CHO whether these reptiles were wild caught or captive bred, and the country that they originated from. CHO stated that they were Philippines water monitor lizards and that no other pet stores carried these reptiles.

21. CHO also included in his Facebook messages several short videos of him at the JTK business holding the same variety monitor lizards as those observed in the FedEx parcel mentioned above. I also confirmed the identity of CHO by matching his

appearance in the videos to a previously obtained driver's license record from the California Department of Motor Vehicles.

22.  CHO has posted pictures of wildlife on the aforementioned Facebook profile approximately since September 17, 2013.  Since 2013, CHO has posted approximately 512 photos of wildlife, in which I observed several photos of exotic wildlife that were being advertised for sale.

### E.  ADDITIONAL PACKAGE IDENTIFIED AS "TOY CARS"

23.  On May 15, 2017, I was informed by USFWS Intelligence Officer Daniel Reed, the intelligence officer assigned to Washington, D.C. that a FedEx parcel with tracking #807710856870 arrived from the Philippines and was delivered to an address in Long Beach, California.  I reviewed the information received from Intelligence Officer Reed and learned that the sender was listed as Kelset Jane VILLAHERMOSA at Poblacion Argo Cebu, Cebu Argao 600, Philippines.  The recipient was listed as Bryan CHO at 916 E. Pacific Coast Hwy, Long Beach, CA 90806.  I was also informed that the parcel was declared as toy cars.  Intelligence Officer Reed was not able to locate the parcel prior to delivery; therefore the parcel was not able to be intercepted or inspected.

24.  On or about May 17, 2017, I conducted a FedEx tracking report for the parcel with tracking #807710856870 at "https://www.fedex.com/apps/fedextrack/," and learned that, on

May 11, 2017, at 9:03 a.m., the parcel was delivered to Long

Beach, California and accepted with signature by a "B.CHO."

      **F.   INTERVIEW OF CHO**

      25.   On August 7, 2017, USFWS SAs Johnson, Diehl, and I

traveled to JTK Reptiles at 916 E. Pacific Coast Highway in Long

Beach, California to interview CHO.  Upon arrival at JTK

Reptiles, I encountered CHO standing behind a cash register at

the store, who I identified from his previously obtained

California Department of Motor Vehicles driver's license.  I

told CHO that I was with the USFWS Office of Law Enforcement and

displayed my Law Enforcement credentials.  I also initially

addressed him as "Bryan", to which CHO verbally responded, in

order to confirm his identity as being Bryan CHO.  I explained

to CHO that the reason why USFWS SAs were at his place of

business, was to speak with him regarding the following FedEx

parcels that were delivered to the JTK Reptiles address and

signed for by CHO.  CHO voluntarily agreed to speak with the

special agents.  Prior questioning, I advised CHO that Title 18,

United States Code, Section 1001 established that it was a

federal offense to lie to a federal officer.  During the

interview, CHO appeared to discuss three shipments from the

Philippines: (1) the stereo equipment shipment, inspected by SA

Colby, from October 2016; (2) a previously unknown shipment

involving speakers; and (3) the toy car shipment from May 2017.

October 28, 2016 Shipment Hidden in Stereo Equipment

26.   I asked CHO about the package mentioned above that had
been identified as amplifiers (stereo equipment) from October
2016 and I specifically presented him with a picture of the
FedEx label with tracking #807716803668 for that package to
review.  CHO initially said that he did not recall this specific
parcel, and that a lot of parcels were delivered to the JTK
business.  After further questioning, including about a package
from "Aris Gil Pagano," CHO responded that he did receive a
parcel from a Jeshul, but not from the mentioned Philippines
sender "Aris Gil Pagano."  CHO stated that, after receipt of the
parcel, on a later unconfirmed date that an "uncle" of Jeshul
came into the JTK business and picked-up the parcel.  CHO then
confirmed knowing that the FedEx parcel contained speakers;
however, he denied knowing that the stereo equipment contained
monitor lizards and he said he never opened it.  When I asked
CHO to provide further information about the uncle who picked up
the FedEx parcel, CHO stated that he did not know any contact
information for the uncle and that he never was informed that
the stereo equipment contained monitor lizards.  Although CHO
denied opening that package, while we were there, he said that
he still had a package, and handed us the box that had a
tracking number that matched the one for the shipment in which
SA Colby had seen the monitor lizards hidden in speakers.  The

14

box also contained speakers.  SA Johnson informed me that the
speakers appeared to be the one she had found on the chair when
she had gone to JTK Reptiles in an undercover capacity in
October 2016 and not the one that SA Colby sent photographs of
during the inspection of the October 2016 shipment.

### Previously Unknown Shipment of Stereo Equipment

27.  When discussing packages, CHO identified ordering an
additional package from the Philippines, which he said he
received, which contained speakers.  CHO said the speakers were
for his kids and did not contain monitor lizards.  I was not
aware of this shipment of speakers before the interview and
believed, based on my training and experience, that CHO was
trying to explain away a shipment that he thought we knew about
(but which we did not).

28.  I also formed that the opinion that the speakers that
CHO gave us during the interview, mentioned in paragraph 26
above, may have been from that shipment (moreover, as noted
previously, the speakers looked like they had been taken apart
slightly to potentially remove an animal).

29.  From that opinion and because I know that, in 2016 and
2017, monitor lizards were commonly smuggled into the United
States from the Philippines in stereo equipment, I formed the
opinion that this shipment too contained monitor lizards.

**May 15, 2017 Shipment Hidden in Toy Cars**

30.   I asked CHO if he had received any monitor lizards from the Philippines.  CHO acknowledged receiving monitor lizards packaged in toys (as identified above, the most recent shipment to CHO was in May 2017 and that shipment had been identified as toy cars).  CHO said that there were two or three monitor lizards "inside the socks," which were then "inside the toy."  According to CHO, after he received the shipment, he communicated with the Philippines supplier and stated, "You said you can ship legally with paper work and this illegally."  CHO also told the supplier that one of the animals was found dead upon arrival.

31.   CHO showed us a photograph on his phone of the dead monitor lizard, which is attached as Exhibit F.  SA Johnson informed me that SA Colby had told her that the black monitor lizard that he had inspected from the October 2016 package was not doing well when he inspected it.  From that, SA Johnson told me that she inferred that that monitor lizard had died before or around when it got to CHO, which is why she did not see it when she was in CHO's store on October 28, 2016 (but she had seen the other four monitor lizards that appeared to be from that shipment).  SA Johnson also believed that CHO was confused which shipment this dead monitor lizard was from (CHO made it sound like it was from the toy car shipment in May 2017, but the

circumstances made it look like it was from the October 2016 shipment).

32. I asked CHO how he met the Philippines supplier. CHO told me that the Philippines supplier messaged him through Facebook. According to CHO, the Philippines supplier offered him water monitors, and Philippines sail-fin dragons. CHO told the supplier that he (CHO) was not aware of any legal shipments of wildlife that were being exported from the Philippines. CHO confirmed that he placed an order for monitor lizards via Facebook. CHO told me that he ordered three monitor lizards of the variety Varanus salvator and that paid $600 or $700 United States dollars for the shipment via a Western Union wire transfer.

33. CHO identified that he had expected permits with the monitor lizards. I asked CHO, when he asked the Philippines supplier about permits, specifically what law was he referring to as requiring permits. CHO responded, "they have to be CITES" because anything that is exported from the Philippines requires a CITES permit in order to be legally imported into the United States. I asked CHO if he knew the level of CITES protection that has been assigned to monitor lizards. CHO responded no, but stated that "paperwork" was required to legally import monitor lizards into the United States.

34.   I asked CHO how the monitor lizards were packaged. CHO responded, "In the socks."  I then asked about the color of the socks, and he responded, "Black."  CHO explained that the monitor lizards were packaged inside of toy cars, and that after removing the monitor lizards from the socks, he then found that three Varanus cumingi monitor lizards were packaged within the toy cars.

35.   I asked CHO if he had a conversation with the Philippines supplier on how to describe the contents of the parcel on the accompanying FedEx label.  CHO told me that the he placed the order for the monitor lizards through Facebook, but did not discuss with the supplier what to declare for the contents of the parcel.

### G.   Based on My Training and Experience, CHO Was Knowingly and Illegally Smuggling Wildlife

34.   Based on my training and experience (and information provided to me by other experienced USFWS agents with whom I work), I know that wildlife smugglers conceal wildlife in shipments to evade law enforcement detection.  Here, the monitor lizards were hidden inside other objects (stereo equipment and toy cars), and the packages had false descriptions, all of which suggests that defendant was smuggling the items into the United States.

35.  Moreover, CHO denied opening the package that contained monitor lizards hidden in speakers in October 28, 2016, even though SA Johnson saw monitor lizards matching those in that package at CHO's store shortly after the delivery, and even though CHO possessed the opened box with the tracking number from that package, which he gave to us on the date we interviewed him while, at the same time, denying opening that package.  I believe that CHO was untruthful about this package and that he was untruthful because he knew that the package contained monitor lizards that he was illegally smuggling into the United States.

36.  Indeed, it was apparent from talking to CHO that he knew about the requirements of CITES for monitor lizards.  That he smuggled more than one shipment into the United States concealed in other objects shows his intention to evade the requirements of CITES.

37.  Based on all of these facts, I believe that CHO knew that it was not lawful to bring the monitor lizards into the United States despite his statement that he purportedly communicated with the Philippines supplier about the need for CITES permits and purportedly his expressed surprise that there were no permits.

## V. CONCLUSION

38.   Based on the foregoing facts, I believe there is

probable cause to charge BRYAN CHO also known as Cho Ferdmond

Yap, with fraudulently or knowingly importing merchandise into

the United States contrary to law in violation of Title 18,

United States Code, Section 545.

Juan Ramirez Amezcua
Special Agent, United States
Department of the Interior,
United States Fish and
Wildlife Service

Subscribed to and sworn before
me this 2nd day of October
2017

HONORABLE JOHN E. MCDERMOTT
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

Monitor Lizards in Socks Next To Speaker (Photo taken by SA

Colby)



ATTACHMENT B

1 Brightly Colored Monitor Lizard Removed from Sock by SA

Colby



ATTACHMENT C

1 Dark Colored Monitor Lizard Removed from Sock by SA Colby



ATTACHMENT D

Stereo Equipment Next to Container with

Monitor Lizards at CHO's business



ATTACHMENT E

Monitor Lizards in Container at CHO's Reptiles Business



## ATTACHMENT F

Photograph of Dark Colored Monitor Lizard

Provided by CHO

